UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

MORGAN STANLEY CAPITAL GROUP INC.,

        Plaintiff,

  -against-

SWITCH, LTD.,

        Defendant.

------------------------------------------------------------X

Case No. 1:20-cv-9159

**COMPLAINT**

Plaintiff Morgan Stanley Captial Group Inc. ("Plaintiff" or "Morgan Stanley"), by its attorneys, Leader Berkon Colao & Silverstein LLP, as and for its Complaint against defendant Switch, Ltd. ("Defendant" or "Switch"), alleges as follows:

## NATURE OF THE ACTION

1. Morgan Stanley brings this action for breach of contract to recover at least $2,230,868.56, plus pre-judgment interest, expenses, costs, and attorneys' fees arising from defendant's purchase of energy and transmission and delivery services from Morgan Stanley, the delivery of such energy to defendant, and defendant's refusal to pay certain county business license fees owed under the parties' agreement and pursuant to Nevada Revised Statutes ("NRS") 704B.360 and Clark County Code sections 6.13.040 and 6.13.110.

2. As more fully described below, defendant breached the parties' agreement by failing to pay the amounts owed under NRS 704B.360 and Clark County Code sections 6.13.040 and 6.13.110, as invoiced to defendant by Morgan Stanley.

## THE PARTIES

3. Plaintiff Morgan Stanley is a corporation formed under the laws of the State of Delaware with its principal place of business at 1585 Broadway, New York, New York 10036. Morgan Stanley is an active participant in U.S. energy and power markets, providing physical power supply and power system management under competitively priced long term contracts as well as energy-related risk management services to clients throughout the United States, as well as globally.

4. Defendant Switch is a corporation formed under the laws of the State of Nevada with its principal place of business at 7135 S. Decatur Boulevard, Las Vegas, NV 89118.  Switch is a technology infrastructure business that designs, constructs and operates data centers.  These data centers require significant energy in their operation.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332, based upon diversity of citizenship.  The amount in controversy exceeds $75,000, exclusive of interest and costs, and complete diversity exists between the parties.

6. This Court has personal jurisdiction over the Defendant.

7. Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred in this District. Specifically, defendant contracted with Morgan Stanley in this District, Morgan Stanley performed services pursuant to the parties' agreement in this District, and defendant failed to pay Morgan Stanley in this District.

## BACKGROUND

*Switch Seeks to Exit Nevada's Public Utility Scheme*
*and Purchase Energy from Morgan Stanley*

8. On September 30, 2016, Switch filed an application with the Public Utilities Commission of Nevada (the "PUCN") pursuant to NRS Chapter 704B for authority to purchase energy from a provider of new electric resources for Switch's operations located in the service areas of Sierra Pacific Power Company and Nevada Power Company, together doing business as NV Energy ("NV Energy").

9. NV Energy is Nevada's electric utility which generates, transmits and distributes electric service in northern and southern Nevada.

10. On November 10, 2016, Switch filed an Amended Application with the PUCN.

11. In particular, Switch sought to purchase energy from Morgan Stanley for use in both Clark and Storey Counties in Nevada.

12. In 2003, the Nevada State Legislature passed NRS Chapter 704B to permit Nevada energy customers to purchase energy from providers of new electric resources under certain circumstances outlined in the statutes.

13. One of the requirements set forth in NRS 704B.360 to permit a customer to exit the bundled retail electric service provided by NV Energy is to require that customer to "[p]ay any other tax, fee or assessment that would be due a governmental entity had the eligible customer continued to purchase energy, capacity or ancillary services from the electric utility."

14. The purpose behind that requirement was to prevent the ability to avoid paying taxes and fees from being the reason a customer departs the NV Energy bundled service.

15. The Regulatory Operations Staff of the PUCN, in the prepared testimony of Adam E. Denise, provided to the PUCN on December 18, 2018 in Docket No. 18-09003, confirmed that purpose at footnote 8:

> [8] It is my understanding that the policy purpose of this provision is to prevent the ability to avoid paying taxes and fees from being the reason a customer departs NPC bundled service. The economic benefit associated with a NRS Chapter 704B customer's departure should not be based upon avoiding paying taxes and fees that bundled customers have to pay.

16. Indeed, the Nevada Assembly Committee Minutes of February 10, 2003, in debating Assembly Bill 32, confirms that one purpose of what would become NRS 704B.360 was to require the exiting customer "to pay the same taxes and fees the customer would have been required to pay had the customer continued to purchase energy from an electrical utility for which a Certificate of Public Convenience and Necessity had been approved."

17. One of those fees required to be paid pursuant to NRS 704B.360 is the Clark County quarterly license fee set forth in Clark County Code section 6.13.040(b)(2) (the "Clark County Business License Fee"): "Five percent of the gross revenue earned during the calendar quarter from customers located within the county. This rate is comprised of a four percent business license fee and a one percent right-of-way fee. Effective October 1, 2005, this rate will be comprised of a five percent business license fee."

18. Neither Clark County nor Storey County has a franchise tax.

19. Section 6.13.110 of the Clark County Code mandates that the energy provider collect these fees "directly from its customers" for remittance to Clark County.

***Switch Agrees to Pay the Clark County Business License Fees***
***As Condition of Exiting NV Energy Service***

20.     Given this background, on December 8, 2016, Switch and the PUCN Regulatory Operations Staff jointly filed a Stipulation (the "Stipulation") setting forth an agreement between the parties resolving all issues concerning the proposal that Switch be permitted to exit as a customer of NV Energy's "bundled retail electric service and engage in a transaction with a provider of new electric resources."

21.     Among other things, the Stipulation specifically sets forth as Conditions - Paragraph 3 that Switch:

> will also be responsible for the payment of several non-bypassable fees as applicable in the relevant service area and as required by law, as described in Exhibit A, that existed at the time of its original Southern Nevada application….

22.     Exhibit A to the Stipulation is the PUCN Regulatory Operations Staff's Initial Impact Analysis for Switch, Ltd. NRS 704B Departure Application, Docket No. 16-09023, which further defines at page 3 the fees for which Switch will be responsible as described in Conditions - Paragraph 3 of the Stipulation:

> Additionally, Switch will still be required to pay the Commission's annual assessment pursuant to NRS 704.033 and the 5 percent county franchise fee, via all sales made by its provider of new electric resources.

23.     The "5 percent county franchise fee" refers to the Clark County Business License Fee set forth in Clark County Code section 6.13.040(b)(2).

24.     On December 8, 2016, Switch executed the Stipulation, acknowledging its obligation to pay the Clark County Business License Fee:



```
1   This Stipulation is entered into by each Party as of the date entered below:
2
3   Date: 12/8/16                    By: _____
4
5                                    Regulatory Operations Staff
                                     of the Public Utilities Commission of Nevada
6
7   Date: 12-8-2016                  By: _____
8
                                     Samuel Castor,
9                                    Associate General Counsel
                                     Switch, Ltd.
10
…
28
                        ─────────────────────────────────────────
                        Page 15 – Docket No. 16-09023 STIPULATION
```

25.     The PUCN issued an Order, dated December 28, 2016 (the "Order"), approving Switch's amended application as modified by the Stipulation.

***The Agreement with Morgan Stanley***

26.     Following issuance of the Order, on or about March 8, 2017, Morgan Stanley and Switch entered into an Edison Electric Institute ("EEI") Master Power Purchase and Sale Agreement (the "Master Agreement"), whereby Switch agreed to purchase from Morgan Stanley wholesale electricity.

27.     The Master Agreement is a template created by EEI along with the National Energy Marketers Association and others to streamline the trading relationship.

28.     Certain terms of the Master Agreement were modified and superseded by the EEI Master Power Purchase & Sale Agreement Cover Sheet ("Cover Sheet").

29.     The Confirmation Letter, dated March 9, 2017 (the "Confirmation Letter"), executed by Morgan Stanley and Switch, supersedes both the Master Agreement and Cover

Sheet where there is any conflict among them (the Master Agreement, Cover Sheet, and Confirmation collectively, the "Agreement").

30. Indeed, the Confirmation Letter expressly provides at page one: "to the extent there is a conflict between a provision of the Master Agreement and this Confirmation Letter, the terms of this Confirmation Letter shall control for the purposes of this Transaction."

31. The Confirmation Letter (page six) required Switch to promptly notify Morgan Stanley if it disagreed with any of its terms.

32. Failure to notify Morgan Stanley of any such disagreement within three (3) business days after delivery of an executed copy of the Confirmation Letter to Morgan Stanley constitutes Switch's agreement to the terms set forth in the Confirmation Letter.

33. Morgan Stanley provided the executed Confirmation Letter to Switch, which was countersigned and returned to Morgan Stanley.

34. Since Switch never notified Morgan Stanley of any disagreement with the terms of the Confirmation Letter, it was deemed to have agreed to all terms contained therein, including the Invoicing provision, discussed below.

35. The Agreement contains all of the materials terms as to the Transaction, including as to the Product, price, payment obligations, and term, which is June 1, 2017 through May 30, 2020.

*The Relevant Payment Terms*

36. The Invoicing provision of the Confirmation Letter set forth below requires that the "Seller shall provide Buyer a monthly line item invoice (the "Invoice") for: (i) the delivered Product at the specified Energy Price; plus (ii) the Transmission Charges; plus (iii) All taxes (except sales taxes), charges, and fees as included in relation to NV Energy charges."

> **Invoicing:** Seller shall provide Buyer a monthly line item invoice (the "Invoice") for:
> (i) the delivered Product at the specified Energy Price; plus
> (ii) the Transmission Charges; plus
> (iii) All taxes (except sales taxes), charges, and fees as included in relation to NV Energy charges.
>
> The Invoice shall be provided in accordance with the timelines provided in the Master Agreement. Buyer shall pay the Invoice in accordance with the timelines provided in the Master Agreement. MSCGI will include all charges in the Invoice. Charges not provided to Switch within thirty-six (36) months will be waived, and be uncollectable.

37. This is entirely consistent with NRS 704B.360 and Clark County Code sections 6.13.040 and 6.13.110, making the Clark County Business License Fee among the "fees" referenced in the provision.

38. The Invoicing provision of the Confirmation Letter further provides that these charges can be invoiced by the Seller to the Buyer within thirty-six (36) months.

### *Other Relevant Provisions of the Agreement*

39. The Agreement is governed by New York law, without regard to its principles of conflicts of law, pursuant to Section 10.6 of the Master Agreement.

40. The Cover Sheet further modifies Section 10.6 of the Master Agreement to provide that the prevailing party in any judicial proceeding shall recover its costs and reasonable attorneys' fees.

### *Performance of the Agreement*

41. Morgan Stanley started providing energy to Switch, pursuant to the Agreement, in or about June 2017, fully complying with its obligations under the Agreement.

42. As required by the Agreement, Morgan Stanley invoiced Switch on a monthly basis, separately setting out the charges for the delivered Product at the specified Energy Price and the transmission charges.

43. In or around January 2019, Morgan Stanley and Switch began discussions concerning Switch's obligation to pay the Clark County Business License Fee pursuant to the Agreement, NRS 704B.360, and Clark County Code sections 6.13.040 and 6.13.110.

44. Throughout 2019 and into 2020, Switch continually sought to avoid its obligation to pay these fees, making a variety of invalid, incorrect and even contradictory arguments to both Morgan Stanley and Clark County.

45. For example, after claiming for months that it was not responsible for the Clark County Business License Fees, Switch then tried to argue that it had already paid these fees as part of the "exit fee" it had agreed to pay pursuant to the negotiated Stipulation and Order with the PUCN.

46. Switch has even argued, incorrectly, that Morgan Stanley owes the Clark County Business License Fees (the fees it previously argued it had paid as part of the "exit fee") pursuant to Section 9.2 (Governmental Charges) of the Master Agreement, which relates specifically to taxes -- not fees -- charged by government authorities. Switch's argument completely ignores the controlling Confirmation Letter, which modifies the form Master Agreement and clearly provides, as set forth above in Paragraph 36, that Switch is responsible for "[a]ll taxes (except sales taxes), charges, and fees."

47. Accordingly, whether a tax or a fee (it is a fee), pursuant to the controlling Confirmation Letter, Switch is certainly responsible for these Clark County Business License Fees.

48. For a number of months, while Switch has attempted to avoid responsibility for paying the fees it had both contracted and was statutorily required to pay, Morgan Stanley

engaged in discussions with Clark County's Department of Business License to determine the specific amount of the Clark County Business License Fee required to be collected from Switch.

49. Morgan Stanley continued these discussions with Clark County throughout 2019 and into 2020 as Clark County conducted an audit to determine the precise amount of the license fee owed by Switch to Clark County.

50. On January 16, 2020, Clark County provided Morgan Stanley with a preliminary estimate of the audit result for the period in question (June 1, 2017 to Dec. 31, 2019). According to the County, the amount of the Clark County Business License Fee to be paid by Switch was $1,971,911.07.

51. On January 24, 2020, Morgan Stanley communicated the preliminary results of the audit to Switch, indicating that when the audit was finalized, Morgan Stanley would promptly invoice Switch and expected prompt payment.

52. Switch responded on January 28, 2020, refusing to pay any license fee.

53. On January 30, 2020, Clark County notified Morgan Stanley of the final results of the audit. $1,971,911.07 in Clark County Business License Fees were owed by Switch to Clark County, arising out of Morgan Stanley's sale of energy to Switch.

54. Morgan Stanley notified Switch of the results of the audit on February 4, 2020, indicating that in accordance with the Agreement, Morgan Stanley would include this amount on the next monthly invoice, which would be due and payable by February 25, 2020.

**Switch Breaches the Agreement**

55. On or about February 10, 2020, Morgan Stanley sent its January 2020 invoice to Switch (the "January 2020 Invoice"), including the Clark County Business License Fees owed by Switch for the period June 1, 2017 to December 31, 2019 in the amount of $1,971,911.07, and

the Clark County Business License Fees owed by Switch for January 2020 in the amount of $52,892.93.

56. The invoicing of the Clark County Business License Fees for the period of June 1, 2017 to December 31, 2019 was well within the 36 month period provided for in the Confirmation Letter.

57. On February 16, 2020, Switch disputed the entirety of the business license fees due to Clark County, claiming the fees were Morgan Stanley's obligation. Switch refused to pay the fees.

58. The January 2020 Invoice was due on February 25, 2020.

59. On February 25, 2020, Switch paid the energy bill but did not pay the Clark County Business License Fees in the amount of $1,971,911.07 for the period June 1, 2017 to December 31, 2019, or the Clark County Business License Fees for January 2020 in the amount of $52,892.93, which it owed, breaching the Agreement.

60. On February 26, 2020, Morgan Stanley sent notice to Switch of its failure to pay the Clark County Business License Fees.

61. Pursuant to NRS 704B.360 and Clark County Code Sections 6.13.040 and 6.13.110, which require Morgan Stanley to collect the Clark County Business License Fee from Switch and remit it to Clark County, on February 20, 2020, Morgan Stanley paid $1,971,911.07 to Clark County, Nevada in full payment of all Clark County Business License Fees owed by Switch to Clark County for the period June 1, 2017 to Dec. 31, 2019.

62. To date, Switch has not paid the Clark County Business License Fees invoiced to it in the January 2020 Invoice.

63. On or about March 10, 2020, Morgan Stanley sent its February 2020 invoice to Switch (the "February 2020 Invoice"), including the Clark County Business License Fees owed by Switch for February 2020 in the amount of $49,745.49, and setting forth the past due amount of Clark County Business License Fees.

64. The February 2020 Invoice was due on March 25, 2020.

65. To date, Switch has not paid the Clark County Business License Fees invoiced to it in the February 2020 Invoice.

66. On or about April 10, 2020, Morgan Stanley sent its March 2020 invoice to Switch (the "March 2020 Invoice"), including the Clark County Business License Fees owed by Switch for March 2020 in the amount of $54,838.57, and setting forth the past due amount of Clark County Business License Fees.

67. The March 2020 Invoice was due on April 27, 2020.

68. To date, Switch has not paid the Clark County Business License Fees invoiced to it in the March 2020 Invoice.

69. Pursuant to NRS 704B.360 and Clark County Code Sections 6.13.040 and 6.13.110, which require Morgan Stanley to collect the Clark County Business License Fee from Switch and remit it to Clark County, on or about April 17, 2020, Morgan Stanley paid $157,780.53 to Clark County, Nevada in full payment of all Clark County Business License Fees owed by Switch to Clark County for the period January 1, 2020 to March 31, 2020

70. On or about May 10, 2020, Morgan Stanley sent its April 2020 invoice to Switch (the "April 2020 Invoice"), including the Clark County Business License Fees owed by Switch for April 2020 in the amount of $50,420.88, and setting forth the past due amount of Clark County Business License Fees.

71. The April 2020 Invoice was due on May 26, 2020.

72. To date, Switch has not paid the Clark County Business License Fees invoiced to it in the April 2020 Invoice.

73. On or about June 10, 2020, Morgan Stanley sent its May 2020 invoice to Switch (the "May 2020 Invoice"), including the Clark County Business License Fees owed by Switch for May 2020 in the amount of $51,059.62, and setting forth the past due amount of Clark County Business License Fees.

74. The May 2020 Invoice was due on June 25, 2020.

75. To date, Switch has not paid the Clark County Business License Fees invoiced to it in the May 2020 Invoice.

76. Pursuant to NRS 704B.360 and Clark County Code Sections 6.13.040 and 6.13.110, which require Morgan Stanley to collect the Clark County Business License Fee from Switch and remit it to Clark County, on or about July 17, 2020, Morgan Stanley paid $101,480.50 to Clark County, Nevada in full payment of all Clark County Business License Fees owed by Switch to Clark County for the period April 1, 2020 to May 30, 2020.

## COUNT I
### (Breach of Contract)

77. Morgan Stanley repeats and re-alleges each and every allegation set forth in Paragraphs 1 through 76 above, as if fully set forth herein.

78. The Agreement between Morgan Stanley and Switch is a valid and enforceable contract. Morgan Stanley has complied with and has performed and fulfilled all obligations required of it under the terms of the Agreement.

79. Switch breached the Agreement when it failed to pay the Clark County Business License Fees due and owing as required by the Agreement, NRS 704B.360 and Clark County

Code Sections 6.13.040 and 6.13.110.

80. As a direct and proximate result of Switch's breach of contract, Morgan Stanley has sustained substantial damages in the amount of at least $2,230,868.56, plus attorneys' fees as provided for by the Cover Sheet to the Master Agreement (Paragraph 23 amending Section 10.6 of the Master Agreement) as well as prejudgment interest under New York law (Section 10.6) at the statutory rate of nine (9) percent.

**WHEREFORE**, Plaintiff Morgan Stanley respectfully requests that this Court enter Judgment in its favor and against Defendant Switch, as follows:

a. Awarding Morgan Stanley monetary damages in an amount to be determined at trial, but at least 2,230,868.56, for failure to pay the Clark County Business License Fees owed by Switch to Clark County for the period June 1, 2017 to May 30, 2020;

b. Awarding Morgan Stanley pre-judgment interest on the above at nine (9) percent;

c. Awarding Morgan Stanley all costs, disbursements, and expenses, including reasonable attorneys' fees; and

d. Awarding Morgan Stanley such other and further relief as this Court deems just and proper.

Dated: New York, New York
November 2, 2020

LEADER BERKON COLAO & SILVERSTEIN LLP

By: /s/*Joshua K. Leader*
GLEN SILVERSTEIN
gsilverstein@leaderberkon.com
JOSHUA K. LEADER
jleader@leaderberkon.com
630 Third Avenue, 17th Floor
New York, New York 10017
T: (212) 486-2400
F: (212) 486-3099
*Attorneys for Plaintiff*
*Morgan Stanley Capital Group Inc.*